IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BETH GERNENZ,<br>on behalf of Plaintiff and the class members<br>described below,<br><br>       Plaintiff,<br><br>vs.<br><br>BIG PICTURE LOANS, LLC;<br>MATT MARTORELLO;<br>EVENTIDE CREDIT<br>ACQUISITIONS, LLC;<br>LIONT, LLC;<br>and JOHN DOES 1-20,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  DEMAND FOR TRIAL BY JURY<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT – CLASS ACTION

### MATTERS COMMON TO MULTIPLE COUNTS

1. Plaintiff Beth Gernenz brings this action to secure redress from predatory and unlawful loans (such as Exhibits A-B) made to Indiana residents. The loans are made in the name of Defendant Big Picture Loans, LLC. The lending operation is in fact controlled Defendants (a) Matt Martorello, (b) Eventide Credit Acquisitions, LLC, and (c) Liont, LLC. Other parties involved in making the loans are named as John Does 1-20.

2. Plaintiff seeks damages under the Indiana Consumer Credit Code (Count I) and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Count II).

### JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (general federal question), 18 U.S.C. § 1964 (RICO), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1367 (supplemental jurisdiction). Jurisdiction may also exist under 28 U.S.C. § 1332(d) (Class Action Fairness Act), in that the amount in controversy on a classwide basis exceeds $5 million, exclusive of

interest and costs, and in that there are believed to be over 100 members of the class, all of whom are of diverse citizenship to Defendants.

  4. This Court has personal jurisdiction over Defendants because they:

    a. Knowingly participated in the making and collection of unlawful loans to Indiana residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

    b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

  5. Venue is proper because acts to obtain and collect the loans impacted Plaintiff in the Northern District of Indiana.

  6. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8%

interest.

## PARTIES

### Plaintiff

7. Plaintiff Beth Gernenz is a natural person who at all times relevant has resided in Chesterton, Porter County, Indiana.

### Defendants

8. Defendant Big Picture Loans, LLC is a limited liability company which claims to be "a wholly owned subsidiary of Tribal Economic Development Holdings, LLC, a wholly owned and operated economic arm and instrumentality of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ('Tribe'), a federally recognized Indian tribe, created for the benefit of the Tribe and operating pursuant to Tribal law." It uses the addresses E23970 Pow Wow Trail, Watersmeet, MI 49969 and P.O. Box 704, Watersmeet, MI 49969.

9. Defendant Matt Martorello resides at 3805 Greenbrier Dr., Dallas, TX 75225-5218. He is the actual beneficiary and controlling person of Big Picture Loans, LLC. He devised and conducts the "rent a tribe" scheme complained of herein.

10. Defendant Eventide Credit Acquisitions, LLC is a Delaware limited liability company. Its registered agent and office is Incorporating Services, Ltd., 3500 S. Dupont Hwy., Dover, DE 19901.

11. Defendant Liont, LLC is a Delaware limited liability company. Its registered agent and office is Incorporating Services, Ltd., 3500 S. Dupont Hwy., Dover, DE 19901.

12. On information and belief, Liont, LLC owns and operates Eventide Credit Acquisitions, LLC.

13. On information and belief, Martorello is president of Liont, LLC and owns 85% of Eventide Credit Acquisitions, LLC.

## FACTS RELATING TO INTERNET LENDING BUSINESS

14. Defendant Martorello is not a member of the Tribe and not a Native American.

15. Prior to 2016, Defendant Martorello established a "rent a tribe" operation with the Tribe.

16. The gist of this arrangement is that Martorello would conduct a high-interest lending operation and receive most of the profits from it. In exchange for small payments, the lending operation would be held out as an arm of the Tribe, for the purpose of claiming that it was exempt from state usury laws.

17. The arrangement has been revised on several occasions as a result of governmental and private litigation. *E.g., Otoe-Missouria Tribe of Indians v. New York State Department of Financial Services*, 947 F.Supp.3d 353 (S.D.N.Y. 2013), aff'd, 769 F.3d 105 (2d Cir. 2014).

18. In its present form, Martorello and his companies – Eventide Credit Acquisitions, LLC and Liont, LLC – use the large indebtedness they are owed to direct and control the lending operations of Big Picture Loans, LLC. Among other things, Martorello must consent to (a) the termination or replacement of any manager, director or officer of any of the companies engaged in the lending enterprise, (b) any change in the servicing arrangements, and (c) significant changes in Big Picture Loans, LLC's budget.

19. On information and belief, the actual operations of the lending enterprise are conducted in Atlanta, Georgia, Puerto Rico, the Virgin Islands, Chattanooga, Tennessee, and several locations outside the United States, by non-members of the Tribe. The only tasks performed by members of the Tribe are typing and reviewing borrower information.

20. On information and belief, the Tribe receives about 6% of the gross revenues of the loans complained of herein. Eventide Credit Acquisitions, LLC receives the balance.

21. Although Martorello's ownership of the operation was once evidenced by an equity interest, after governmental and private challenges to the "rent a tribe" arrangement, his ownership and control was changed so that Eventide Credit Acquisitions, LLC is purportedly owed substantial debts by the tribal entities.

22. The use of debt rather than equity was intended to allow the purported ownership

of the lending enterprise to remain with the Tribe, while allowing actual control to be exercised, and most of the revenues to be received, by Eventide Credit Acquisitions, LLC.

23. The actual lending operations were carried out and continue to be carried out in locations other than tribal lands. The financial benefit of the lending operations inures to Martorello and his entities, not the Tribe.

24. The operations that are not conducted on tribal land include lead generation, application review, marketing, funding, underwriting, payment processing, and collection.

25. No member of the Tribe participates in the day to day lending operations.

26. The funds lent are transferred by ACH credit to the borrowers' bank accounts throughout the United States.

27. Repayment of the loans is made by ACH debit from the borrowers' bank accounts throughout the United States.

28. A company called Tribal Loan Management, LLC ("TLM"), originally operated by attorney Rob Rosette of Rosette, LLP, entered into an Exclusivity Agreement and Letter of Intent with the Lac Vieux Desert Band "to develop and operate a lending operation providing small loans to consumer[s] over the internet[.]" (Exhibit C, at JPB00382) TLM undertook to "provide an entire turn-key lending operation to provide consumers with small loans." (Exhibit C, at JPB00383) A lender wholly owned by the Lac Vieux Desert Band entered into a Servicing Agreement with a non-Indian "servicer" (Exhibit D), pursuant to which the servicer received the vast majority of revenue generated.

29. Defendants John Does 1-20 are other natural and artificial persons involved in the lending activities described herein.

30. Defendants have no colorable claim to sovereign immunity.

**FACTS RELATING TO PLAINTIFF BETH GERNENZ**

31. On or about July 6, 2021, Plaintiff Beth Gernenz obtained an installment loan from Big Picture Loans (Exhibit A). The loan had an amount financed of $1,100 and an annual

-5-

percentage rate of 349.54%. It was repayable in twelve monthly installments.

32. Plaintiff paid the loan (Exhibit A) in full, including interest payments

33. On or about June 4, 2022, Plaintiff Beth Gernenz took out an installment loan from Big Picture Loans (Exhibit B). The loan had an amount financed of $1,650 and an annual percentage rate of 396.01%. It was repayable in twelve monthly installments.

34. Plaintiff has made payment on the loan (Exhibit B), including interest payments.

35. Big Picture Loans claims that amounts are still outstanding.

36. Exhibits A-B are written on a standard form loan agreement used by Big Picture Loans on a regular basis.

37. The loans were obtained for personal, family or household purposes and not for business purposes.

## FACTS – GENERAL

38. Defendants regularly make loans to individuals in Indiana at such rates, via a website (Exhibit E).

39. On information and belief, the source of the funds used to make the loans made by "Big Picture Loans" is Martorello, acting though a series of non-tribal entities.

40. A significant majority of the transaction occurs within the State of Indiana – applying for the loan and receiving and collecting the funds.

41. The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

42. Plaintiff never set foot on the Tribe's land.

43. Loans to Indiana residents made in the same manner as the loan to Plaintiff are

governed by the laws of the State of Indiana.

## SOVEREIGN IMMUNITY AS A DEFENSE TO STATE USURY LAWS

44. An entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

45. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

46. An entity that "actually operates to enrich primarily persons outside the tribe or only a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal. 5th 222, 211 Cal. Rptr. 3d 837, 386 P.3d 357 (2016).

47. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

48. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

49. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe

-7-

scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

50. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## INDIANA REGULATION OF LENDING

51. The Indiana Uniform Consumer Credit Code establishes a maximum loan finance charge of 36% per annum for consumer loans.

52. Ind. Code § 24-4.5-3-201, dealing with loans other than supervised loans, provides:

> (1) Except as provided in subsections (7) and (9), with respect to a consumer loan, other than a supervised loan (as defined in section 501 [IC 24-4.5-3-501] of this chapter), a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter). . . .

53. With respect to supervised loans, the Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-508, provides:

> Loan finance charge for supervised loans.
>
> (1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.
>
> (2) The loan finance charge, calculated according to the actuarial method, may not exceed the equivalent of the greater of:
>
>> (a) the total of:
>>
>>> (i) thirty-six percent (36%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter) which is two thousand dollars ($2,000) or less;
>>>
>>> (ii) twenty-one percent (21%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than

-8-

> two thousand dollars ($2,000) but does not exceed four thousand dollars ($4,000); and
>
> (iii) fifteen percent (15%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than four thousand dollars ($4,000); or
>
> (b) twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) of this chapter). . . .

54. There is also a provision for small loans, Ind. Code § 24-4.5-7-101 *et seq.*, but it does not authorize Defendants' rates, and requires that small loans conform to other requirements that Defendants' loans do not comply with.

55. The amount of finance charge provided for in <u>Exhibit A</u> greatly exceeds that permitted in Indiana on either unsupervised or supervised loans, by more than double.

56. Ind. Code § 24-4.5-1-201, "Territorial application," provides:

> (1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .
>
> > (c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.
> >
> > (d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means.
> >
> > (e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.
> >
> > (f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.
>
> For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether

-9-

approval, acceptance, or ratification by any other agent or representative of the creditor or the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .

(5) Notwithstanding other provisions of this section:

> (a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and
>
> (b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.

(6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:

> (a) An agreement that the law of another state shall apply.
>
> (b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.
>
> (c) An agreement that fixes venue. . . .

(8) If a creditor or a person acting on behalf of the creditor has violated the provisions of this article that apply to the authority to make consumer loans (IC 24-4.5-3-502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge, as set forth in IC 24-4.5-5-202.

57.    Ind. Code § 24-4.5-5-202, "Effect of violations on rights of parties," provides:

. . . (3) A debtor is not obligated to pay a charge in excess of that allowed by this Article, and **if the debtor has paid an excess charge the debtor has a right to a refund**. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

(4) **If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten (10) times the amount of the excess charge. If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Article, the penalty may be recovered even though the creditor has refunded the excess charge.** No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the department (IC 24-4.5-6-113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made

-10-

pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made. . . .

(7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.

(8) In any case in which it is found that a creditor has violated this Article, the court may award **reasonable attorney's fees** incurred by the debtor. . . .  (Emphasis added)

58. Defendants are aware through prior litigation that their lending operations are illegal.

## COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE

59. Plaintiff incorporates paragraphs 1-58.

60. Because the loans made to Plaintiff violated the rate limits set by Indiana law and the violation was intentional, Plaintiff and the class members are entitled to ten (10) times the amount of the excess charge.

## CLASS ALLEGATIONS

61. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

62. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of "Big Picture Loans, LLC" at more than 36% interest (all of its loans qualify) (c) where the last scheduled payment on the loan was on or after a date one year prior to the filing of this action.

63. Plaintiff may alter the class definition to conform to developments in the case and discovery.

64. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

65. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

66. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

67. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

68. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

   i. Statutory damages;

   ii. Attorney's fees, expenses and costs; and

   iii. Such other or further relief as is appropriate.

## COUNT II – RICO

69. Plaintiff incorporates paragraphs 1-58.

70. This claim is against Martorello, Eventide Credit Acquisitions, LLC and Liont, LLC, who are the RICO "persons."

71. All loans made in the name of "Big Picture Loans, LLC" to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%).

72. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

73. "Big Picture Loans, LLC" is an enterprise affecting interstate commerce, in that it is

located outside of Indiana and makes loans to Indiana residents via the Internet.

74. Defendants Martorello, Eventide Credit Acquisitions, LLC and Liont, LLC are each associated with this enterprise.

75. Defendants Martorello, Eventide Credit Acquisitions, LLC and Liont, LLC each conducted or participated in the conduct of the affairs of "Big Picture Loans, LLC" through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

76. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

77. Plaintiff brings this claim on behalf of a class.

78. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of "Big Picture Loans, LLC" at more than 72% interest (all of its loans qualify) (c) where the loan was made on or after a date 4 years prior to the filing of suit and one or more payments were made on the loan.

79. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

80. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether "Big Picture Loans, LLC" is an "enterprise."

    c. Whether Defendants Martorello, Eventide Credit Acquisitions, LLC and Liont, LLC are each associated with "Big Picture Loans, LLC."

    d. Whether Defendants Martorello, Eventide Credit Acquisitions, LLC and Liont, LLC each conducted or participated in the affairs of "Big Picture Loans, LLC" through a pattern of making and collecting unlawful loans.

81. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

82. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

83. A class action is superior for the fair and efficient adjudication of this matter, in that:

   a. Individual actions are not economically feasible.

   b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

   i. Treble damages;

   ii. Attorney's fees, litigation expenses and costs of suit; and

   iii. Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Heather A. Kolbus
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

/s/*Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Heather A. Kolbus
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

>  */s/Daniel A. Edelman*
> Daniel A. Edelman

Daniel A. Edelman
EDELMAN COMBS LATTURNER
    & GOODWIN, LLC
20 S. Clark St., Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 739-0379 (FAX)

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman